ATLAS TELEPHONE COMPANY,
et al., Plaintiffs,

v.

CORPORATION COMMISSION
OF OKLAHOMA, et al.,
Defendants.

No. CIV–03–0349–F.

United States District Court,
W.D. Oklahoma.

March 5, 2004.

Ambre C. Gooch, David W. Lee, Kendall W. Parrish, Mary K. Kunc, Ronald Comingdeer, Comingdeer, Lee & Gooch, Kimberly K. Brown, Williams, Box, Forshee & Bullard PC, Oklahoma City, OK, for Plaintiffs.

Chanda R. Graham, Oklahoma City, OK, Charles W. Wright, Rachel Lawrence Mor, Oklahoma Corporation Commission, Office of General Counsel, Oklahoma City, OK, Mark Joseph Ayotte, Philip R. Schenkenberg, Briggs & Morgan, St. Paul, MN, Michael G. Harris, William H. Hickman, Moricoli, Harris & Cottingham, Oklahoma City, OK, for Defendants.

## ORDER

FRIOT, District Judge.

### I. Preliminary Matters

This order is to be read in conjunction with the court's other order entered in this action today. (Other order, docket entry no. 56). The other order determines all issues common to four related actions, CIV–03–0347, CIV–03–0348, CIV–03–0349 and CIV–03–0350. The instant order addresses one additional point of error alleged by the plaintiff rural telephone companies (RTCs), which is unique to defendant WWC License L.L.C., the private defendant in this action. In this order that issue is referred to as "the Western Wireless issue." In general, background matters pertinent to the Western Wireless issue which are covered in the court's other order are not repeated here but are incorporated by reference.

In determining the Western Wireless issue, the court has considered the brief in chief filed by the RTCs, the response brief

filed by Western Wireless (with an appendix), the reply brief filed by the RTCs (with an appendix), the arguments and authorities cited in the Motion to Supplement Response Brief of WWC License L.L.C. d/b/a Western Wireless filed by Western Wireless on January 29, the Supplement to Reply Brief of Rural Telephone Companies filed on February 17, 2004, and the Surreply Brief of WWC License L.L.C. d/b/a Western Wireless filed on February 24, 2004.[1]

## A. Jurisdiction

Based on the considerations stated in the court's other order, the court finds and concludes that it has jurisdiction over the Western Wireless issue.

## B. Standards of Review

The court also concludes that the same standards of review as are set out in its other order apply to its determination of the Western Wireless issue.

## C. Statement of The Western Wireless Issue

As stated in the RTCs' brief in chief filed in this action, the RTCs contend that the Commission erred in the proceedings below because "The OCC Order and The Agreement[ ][2] Impermissibly Require the RTCs to Pay for the Transport of Traffic to a Point Outside Their Networks."

(Brief in chief, p. 24.) In their briefs, the RTCs characterize the subject of this point of error as "virtual interconnection." Western Wireless refers to the subject as "tandem-routed local calling." The Commission and the witnesses also use slightly different terminology to describe the arrangement challenged by the RTCs in this proposition of error.[3] Finding that it is an accurate short-hand label for a complex subject, the court adopts Western Wireless' terminology for purposes of this order and refers to the subject of the Western Wireless issue as the Commission's establishment of tandem-routed local calling.

Given the technical nature of this issue, a general explanation of the concept of tandem-routed local calling, and of the procedural history of the dispute regarding it, is useful.[4] Essentially, the RTCs challenge the correctness of the Commission's rulings regarding the manner in which Western Wireless and the RTCs are to deliver land-to-mobile calls from an RTC customer to a Western Wireless customer with a local telephone number. In negotiations and in the proceedings before the Commission, the RTCs took the position that such calls would be routed as ten-digit long distance calls unless Western Wireless established a point of connection within every RTC exchange. Western Wire-

1. Although many of the issues addressed are the same, the pagination of certain briefs varies. Page numbers used in this order refer to the pagination of the brief in chief filed in this action and to the response brief filed by Western Wireless in this action. The same reply brief was filed in each of the four related actions so there is no variation in pagination with respect to that brief.

2. In this proposition of error, the RTCs refer to "agreements," plural, but the court believes it is more proper to refer to the "agreement," singular. The provision in question appears only in the Western Wireless agreement attached to the First Amended Complaint in this action and is not included in any

of the agreements attached to any of the other First Amended Complaints filed in any of the related actions.

3. Witnesses in the proceedings below referred to this subject as "virtual NXX." The joint issues matrix adopted by the Commission (issue number 8) characterizes the issue as follows: "Is Western Wireless entitled to establish a single point of interconnection at a tandem switch and obtain a virtual NPA NXX in the RTCs' end office switches that subtend the tandem?"

4. This background information is taken from recitals in Western Wireless' response brief. The RTCs have not disputed its accuracy.

less, on the other hand, proposed that the RTC deliver land-to-mobile calls in the same manner as Western Wireless delivers its calls, that is, by delivering the call to the nearest Southwestern Bell Telephone tandem switch, where Western Wireless would then take the call.

Under Western Wireless' proposal, Western Wireless' numbers would have a routing point located at the Southwestern Bell tandem switch. The routing point would tell the telecommunications industry that the numbers in question were local to an RTC exchange area and assigned for use in that area; the routing point would tell the telecommunications industry to deliver the call to Western Wireless at the nearest Southwestern Bell tandem switch. The court finds that, as shown by the evidence, Western Wireless has made it clear that it would implement these arrangements only where it has licenses and facilities to serve customers. (Transcript of proceedings, June 17, 2002, testimony of Mr. Williams at p. cb–83, found in the jointly designated record (JDR) at Bates Stamp 3689, stating that "We would intend it to provide local service in the area where we have both licensed coverage and actual cell site radio coverage.")

The Commission resolved the dispute in the manner requested by Western Wireless, that is, by adopting the arrangement referred to in this order as tandem-routed local calling. Unfortunately, neither the First Amended Complaint nor any of the RTCs' briefs identify-at least not with any precision-the language in the Commission's orders which establishes tandem-routed local calling, to which the RTCs take excep-

tion in this point of error. The closest the RTCs come to specifying the challenged portion of the Commission's rulings is their statement (brief in chief, p. 24), that "The OCC *Arbitration Order* and the Agreements between WWC and certain RTCS' require the RTCs to route local exchange traffic to a virtual form of interconnection that is contrary to the Act and the methods of interconnection authorized by the FCC." (Emphasis added.)

In an action of a less technical nature, this vague reference to the Arbitration Report might be enough, but in this action, challenging one aspect of a four-page single spaced Arbitrator's Report (with a 51–page summary of evidence and a three-page joint issues matrix attached as exhibits) by simply referencing the Arbitration Order, is a grossly inadequate identification of the challenged ruling. This failure might well be sufficient grounds, standing alone, upon which to deny the RTCs' request to reverse the Commission's ruling. The court, however, rests no part of its determinations on that failure but has instead attempted to identify for itself the specific language in the Arbitration Report to which the RTCs object in this proposition of error.

Having reviewed the Report, it appears that it is issue number eight of the joint issues matrix attached to that Report (adopted by the Commission as a part of its Final Order in the proceedings below) [5] which contains the challenged ruling.[6] The Arbitrator's Report states the following decision of the arbitrator:

**5.** The proceedings below are identified as PUD 200200151, and the final order entered in those proceedings is identified as Final Order No. 468960, found in the JDR at Bates Stamp 209.

**6.** See n. 3, *infra.*, for a complete statement of matrix issue no. 8. By citing matrix issue no.

8, the court does not suggest that the RTCs must necessarily tie their appeal points to the issues matrix, however, they must tie their appeal to *some* ruling by the Commission. Here, the RTCs have identified the Arbitration Ruling as containing the challenged ruling, and the only applicable Commission ruling appears to be matrix issue number eight.

The Arbitrator concurs with the position of Western Wireless that based on standards of non-discrimination and numbering obligations, Western Wireless should have the option of establishing local numbers in an RTC switch without having a direction connection.

Turning to the challenged language in the interconnection agreement (as opposed to the challenged portion of the Arbitrator's Report), the court observes that the RTCs' briefs do not identify which specific language from the interconnection agreement they challenge as a part of the Western Wireless issue. Fortunately, other documents provide firmer moorings; the First Amended Complaint (pp. 16–17) alleges that "The requirement found in the OCC Order and Section 4.3.3 of the Interconnection Agreements impermissibly" make certain requirements,[7] and, Western Wireless' briefs identify section 4.3.3 of the Western Wireless agreement as the challenged portion of that agreement, an identification which the RTCs' briefs do not dispute.

That portion of the agreement challenged by the RTCs in this point of error provides as follows.

> 4.3.3. Land to Mobile Traffic—CMRS Provider may obtain and Telephone Company will recognize as local all numbers assigned to Telephone Company's rate center; including those which may have a designated LERG [Local Exchange Routing Guide] routing point that is outside the Telephone Company's rate center but within the same LATA [Local Access Transport Area] as the rate center. This subparagraph applies whether Telephone Company and CMRS Provider are directly or indirectly interconnected. If indirectly connected, Telephone Company will deliver

those calls to CMRS Provider at the Southwestern Bell LATA tandem.

## II. Findings and Conclusions

■ With these preliminary matters concerning the nature of the RTCs' challenge out of the way, the court states its findings and conclusions regarding the correctness of the Commission's determination of the Western Wireless issue, as follows.

In general, the court agrees with Western Wireless' contention that the RTCs' arguments urging reversal of the Commission's determination of the Western Wireless issue are disjointed and poorly explained. (Response brief, p. 45.) The court, however, has attempted to piece together those arguments in order to evaluate them. Having done so, the court has determined that Western Wireless' arguments in defense of the Commission's ruling are well taken, and finds and concludes that it concurs with those arguments as they are stated at pages 38 through 52 of Western Wireless' response brief and in Western Wireless' surreply brief.

The court elaborates by stating the following specific conclusions.

■ First, in agreement with Western Wireless—and it is not a contention the RTCs dispute—the court concludes that the 1996 Telecommunications Act, 47 U.S.C. § 201 *et seq.*, opened local telephone markets to competition and that one of the Act's purposes is to foster competition in the telecommunications industry. *See, Implementation of the Local Competition Provisions of the Telecommunications Act of 1996,* CC Docket No. 96–98, First Report and Order, 11 FCCR 15499, FCC 96–325 (1996), (referred to by the

---

7. Again, this allegation refers to the "agreements," but the court believes that it is only the Western Wireless interconnection agreement which contains the challenged language.

parties in their briefs as the First Report and Order), ¶¶ 1–4.

Second, the court finds that there is record evidence that "If Western Wireless' customers lack the ability to receive local calls from many of the independent telephone companies' landline subscribers within the Western Wireless' major trading area, then Western Wireless is placed at a competitive disadvantage." (Direct testimony of Ron Williams, at p. 25, found in the JDR at Bates Stamp 976.)

Third, with regard to issues of reasonableness, feasibility, and economic burdens, the court finds that there is record evidence that Western Wireless can obtain numbers and assign those numbers as local to an RTC area. There is evidence that the RTCs can program their switches to recognize these Western Wireless numbers as local and route calls from those numbers accordingly, through Southwestern Bell tandem switches. (Direct testimony of Ron Williams at p. 15, in the JDR at Bates Stamp 1285.) There is also evidence that existing facilities could be used to accomplish this result. (Cross-examination of Gary M. Jay, at p. rdh–14, in the JDR at Bates Stamp 3804.)

Fourth, the RTCs contend (brief in chief, p. 31) that they "presented evidence" to the Commission that a "virtual interconnection requirement would create an undue economic burden on the RTCs by requiring the RTCs to...construct or pay for the use of network facilities to transmit and route Western Wireless' telephone exchange calls to its point of physical interconnection with SWBT's network." The court finds, however, that the RTCs do not support this contention with a citation to any supporting evidence.

Fifth, as already reviewed, the court finds that Western Wireless has identified record evidence tending to show that the tandem-routed local calling arrangement required by the Commission and § 4.3.3 is both feasible and reasonable. Specifically, there is record evidence which tends to show that by using existing network facilities, the RTCs can meet their local dialing parity obligations and deliver their customers' calls to Western Wireless at a common point of connection, that point being the nearest Southwestern Bell tandem switch, and that such an arrangement is feasible and reasonable. The record evidence is sufficient to support the Commission's findings and determinations regarding tandem-routed local calling, including the parties' obligations set out in § 4.3.3 of the Western Wireless interconnection agreement.

Sixth, the court concludes that two recent circuit court decisions lend support to the Corporation Commission's approval of tandem-routed local calling in the proceedings below, and support the Commission's determination that Western Wireless, as a competitive carrier, has the right to establish local numbers within a rate center without maintaining a physical point of connection in that rate center. Those two decisions are *Mountain Communications, Inc. v. F.C.C.*, 355 F.3d 644 (D.C.Cir.2004) and *MCIMetro Access Transmission Servs., Inc. v. Bellsouth Telecommunications, Inc.*, 352 F.3d 872 (4th Cir.2003).

In summary, the court determines that tandem-routed local calling as approved by the Commission and as implemented pursuant to § 4.3.3 of the agreement, is consistent with the Act and the Act's general purposes, including the fostering of competition; that tandem-routed local calling is feasible, reasonable, and does not place undue economic burdens on the RTCs; and that the Commission did not err when it established tandem-routed local calling in the manner requested by Western Wireless.

*Conclusion*

After a thorough study of the parties' submissions, the record, and the relevant arguments and authorities, the court orders as follows with respect to the Western Wireless issue.

The RTCs' additional point of error, unique to this action, which challenges the Oklahoma Corporation Commission's approval of tandem-routed local calling and section 4.3.3 of the Western Wireless interconnection agreement, is **DENIED** as grounds for reversal of the Commission's determination of the Western Wireless issue. The declaratory and injunctive relief requested by the RTCs based on this proposition of error is therefore **DENIED.** The Commission's Final Order entered in the proceedings below, and the Western Wireless interconnection agreement required by that order, are **AFFIRMED.**

### *JUDGMENT*

In accordance with the court's orders entered today, judgment is hereby entered in favor of the defendants and against the plaintiffs, in each of the above-styled actions.